IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL PETER RENFRO,<br><br>        Petitioner,<br><br>    vs.<br><br>DERRAL G. ADAMS, Warden,* *et al.*,<br><br>        Respondent. | Case No. 2:06-cv-00930 JKS<br><br>ORDER |

      Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He seeks to challenge his 2003 conviction for receiving stolen property.  He alleges relief is warranted on the grounds that:  (1) his rights to due process and compulsory process were violated when the prosecutor selectively granted immunity to only one of two percipient witnesses who were otherwise unavailable because they exercised their Fifth Amendment right to avoid self-incrimination; (2) his due process rights were violated when the trial court gave a "dynamite" instruction to the jury after it indicated it was deadlocked; and (3) his Sixth Amendment rights were violated when the trial court impermissibly relied on judge-found facts to impose the upper term in accordance with California's determinate sentencing scheme.  Docket No. 1.  Respondent asserts that Petitioner's arguments fail on the merits.  Docket No. 9.  Petitioner did not file a Traverse.  The Petition shall be denied for the reasons set forth below.

---

    \* Derral G. Adams is substituted for his predecessor Jeanne S. Woodford pursuant to Federal Rule of Civil Procedure 25(d).

1

## BACKGROUND

In an unpublished opinion filed on October 4, 2005, the California Court of Appeal, Third Appellate District, summarized the factual background of the offense and trial:

> On February 26, 2002, 14-year-old Edgar stole two bracelets, some alcohol, and miscellaneous other items from his next-door neighbor. He took the loot to his friend Albert's house. Albert is defendant's nephew. That afternoon defendant went to Albert's house and saw the bracelets sitting on top of a compact refrigerator in Albert's room. Edgar, believing the bracelets were fake, sold one to defendant for $ 8. Defendant told the boys he wanted to buy the bracelet for his girlfriend.
>
> The neighbor discovered the burglary later that day and solicited Edgar's help in finding her stolen bracelets. She explained, apparently to both boys, that the bracelets were very important to her because she had inherited them from her mother. She offered a $ 5,000 reward for the return of the bracelets, one consisting of sapphires and diamonds and the other known as a "tennis bracelet" consisting of approximately 38 stones with a separate gold metal jacket the bracelet sat in. Defendant had purchased the tennis bracelet.
>
> Edgar testified he rode his bike to defendant's house and asked defendant to return the bracelet because there was a $ 5,000 reward for it. Defendant told him he had already sold it for $ 100. The boys returned the sapphire bracelet. Edgar told his neighbor that Albert purchased the bracelet from a guy at an Exxon station for $ 50. She gave him a check for $ 50 and later another one for $ 500 to encourage him to keep looking for the tennis bracelet. A few days later, the neighbor reported the burglary to the police.
>
> Defendant eventually gave the bracelet to his girlfriend as a late Valentine's Day gift. He told her he bought the bracelet from his nephew. As the only witness for the defense, the girlfriend testified that although she liked the bracelet, she returned it to defendant because it was too big and fell off her hand. On March 18, 2002, she and defendant went to a pawnshop to have a ring sized. The owner offered defendant $ 800 for the bracelet but referred him to a jeweler who he believed would pay more.
>
> There was considerable testimony about the value of the bracelet and its appearance before the jeweler cleaned it. The jeweler told defendant the diamonds in the bracelet were low-grade quality. After asking defendant if he was the owner and obtaining his identification, the jeweler paid defendant $ 1,300 for the bracelet. The transaction was recorded on videotape. The jeweler testified defendant did not seem nervous or in a hurry. Defendant's girlfriend left her ring with the jeweler to be sized.
>
> During the police investigation, a detective contacted local pawnshops and located the missing bracelet. The jeweler informed the investigator that defendant's girlfriend would return for her ring. When she did, the police informed her the bracelet had been stolen.
>
> Defendant's girlfriend made arrangements with the jeweler to repay the $ 1,300 he lost in the transaction. She made regular payments, purportedly on defendant's behalf. By the time of trial, they had paid the jeweler $ 700.

*People v. Renfro*, No. C044390, 2005 Cal. App. Unpub. LEXIS 9029, *2-6 (Cal. Ct. App. Oct. 4, 2005).

Petitioner appealed his conviction making the same arguments presented in the instant petition. The Court of Appeal affirmed the conviction in a reasoned opinion issued October 4,

2005. *Id*. The Supreme Court of California denied review without comment on December 14, 2005. *People v. Renfro*, No. S138542, 2005 Cal. LEXIS 13939 (Cal. 2005). The instant federal petition was timely filed on April 11, 2006. Docket No. 1.

## LEGAL STANDARD

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts. *See Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). A federal writ is not available for an alleged error in the interpretation or application of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149-50 (9th Cir. 2000); *Middleton*, 768 F.2d at 1085. Habeas corpus cannot be utilized to try state issues *de novo*. *Milton v. Wainwright*, 407 U.S. 371, 377 (1972).

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003). Where a state court has adjudicated the merits of a petitioner's claim, this Court, under AEDPA, may not grant relief unless the state court decision "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." *Id*. To qualify as "unreasonable," it must be objectively unreasonable, a substantially higher threshold than merely incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

Clearly established federal law refers only to the holdings of the Supreme Court's decisions in effect at the time of the relevant state-court decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006). In the absence of an applicable holding of the Supreme Court, it cannot be said that a state court decision is contrary to or an unreasonable application of clearly established federal law. *See id*. at 77. Finally, even if the AEDPA standard is satisfied, the Court cannot grant relief unless the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993); *Fry v. Pliler*, 127 S. Ct. 2321, 2326-27 (2007) (*Brecht* standard continues to apply after enactment of AEDPA).

In applying this standard, a federal district court looks to the last reasoned state court decision as the basis for the state court judgment. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## DISCUSSION

I - Witness Immunity

Petitioner argues his rights to due process of law and compulsory process were violated when the prosecutor refused to grant Albert immunity so that he would be available as a defense witness at trial. Respondent contends the Court of Appeal's decision denying this claim is not an unreasonable application of clearly established federal law.

The Court of Appeal addressed this claim on direct review:

> Defendant attempts to invoke a narrow federal exception to the general rule that a criminal defendant cannot compel the government to grant immunity to a witness. The Ninth Circuit Court of Appeals has recognized such an exception "where the fact-finding process is intentionally distorted by prosecutorial misconduct, and the defendant is thereby denied a fair trial." (*United States v. Westerdahl* (9th Cir. 1991) 945 F.2d 1083, 1086.) In order to fall under the Ninth Circuit exception, the defendant must show that "(1) the testimony was relevant; and (2) the government distorted the judicial fact-finding process by denying immunity." (*United States v. Young* (9th Cir. 1996) 86 F.3d 944, 947.) The distortion must be intentional. (*Id*. at p. 949.)
>
> The Attorney General insists that defendant waived the immunity issue by failing to request the court to grant Albert immunity at trial and, more substantively, that there is no such exception recognized in California. We reject the Attorney General's rigid application of the waiver doctrine. The record is replete with defense counsel's complaints that his client's right to a fair trial had been impinged by the prosecutor's selective grant of immunity. Defense counsel expressed resignation and frustration that the trial court could not, at his behest or on its own initiative, grant immunity to a defense witness. We will not translate his mere acknowledgment of

existing law into a waiver of a claim he, in reality, exposed and complained about throughout trial.

Nor is the law as crystal clear as the Attorney General suggests. The California Supreme Court has not unequivocally endorsed either the Third Circuit's or the Ninth Circuit's exceptions to the general rule, nor do we. However, in several cases our Supreme Court has assumed that some kind of exception might exist. (*People v. Stewart* (2004) 33 Cal.4th 425, 468-469; *In re Williams* (1994) 7 Cal.4th 572, 603; *People v. Hunter* (1989) 49 Cal.3d 957, 974, 264 Cal. Rptr. 367.) Yet in those cases, the defendants had failed to meet their burden of proof. We need not explain the differences between the heavier burden of proof required of defendants by the Third Circuit Court of Appeals (*Government of Virgin Islands v. Smith* (3d Cir. 1980) 615 F.2d 964, 972) and the more relaxed standard sanctioned by the Ninth Circuit Court of Appeals (*United States v. Young* (9th Cir. 1996) 86 F.3d 944, 947-948) because the record does not support defendant's claim under even the Ninth Circuit's more generous standard of proof. The lack of a record, not the law, is fatal to his argument on appeal.

Defendant did not request an evidentiary hearing, and while we concluded above that his failure to do so did not constitute a waiver, we are left with a meager and ambiguous record of what his testimony would have been. The best we can find is a remark defense counsel made in the context of objecting to the prosecutor's request for a special jury instruction during closing arguments. In what might be construed as a posttrial offer of proof, defense counsel stated: "We did interview [Albert] and [Albert] states that there was -- he does state that the sale actually was by him, not by [Edgar] and he went into some details, which is why -- remember when the People said we don't intend to call [Albert], we said we would like to call [Albert] because we knew that [Albert] said the time frame as to when [Edgar] purportedly spoke with [defendant] was at issue, in the sense he said, I don't know if we actually even talked to him before he was arrested, versus after. [P] And it also differed in the facts as to who actually spoke to him. He's saying whether or not it was him -- he says he doesn't know whether [Edgar] -- that [Edgar] spoke to him, you know, said he spoke to him, but he doesn't know whether it was before or after my client had already been arrested, which is one of the elements they're using."

Defendant argues that the prosecutor's blatant misconduct permeated the trial, beginning with the threat to prosecute Edgar if his testimony differed from his earlier statement; continuing in opening statement when he referred to Albert's story, knowing Albert was unavailable to testify; and culminating in his stubborn refusal to grant Albert the same immunity he granted his key government witness, Edgar. However, defendant must show that by denying immunity the prosecutor intentionally distorted the fact-finding process. We cannot say the absence of Albert's testimony, as vaguely represented by defense counsel, distorted the fact-finding process.

Simply put, we do not have a clear statement by Albert as to what he would say. Defense counsel suggests he might testify that he was not sure when they spoke to defendant about the reward. In the Ninth Circuit Court of Appeals cases recognizing that a defendant's right to a fair trial can be jeopardized by a prosecutor's refusal to grant immunity to defense witnesses, those witnesses were prepared to clearly contradict key government witnesses. By contrast, we have only defense counsel's vague summation that Albert might not be sure of the time in which he and Edgar spoke to defendant. We cannot intrude upon the right of the prosecutor, as an integral representative of the executive branch of government, to withhold immunity based on the vague and uncertain testimony a defense witness might have provided. On appeal, unlike writ proceedings, we are restrained by the record, and on this meager record, we cannot extend established precedent based on the speculative notion that the exclusion of the testimony distorted the fact-finding process.

*Renfro*, No. C044390, 2005 Cal. App. Unpub. LEXIS at *6-11.

First, while it is clear that a defendant is entitled to present competent witnesses at trial,[1] the Court can find no holding of the United States Supreme Court addressing whether a prosecutor's decision to selectively grant immunity only to its witnesses, or a trial court's failure to *sua sponte* grant immunity to an otherwise unavailable defense witness, violates a defendant's right to either compulsory or due process. In the absence of an applicable holding, this court cannot find the state court's decision was an unreasonable application of clearly established federal law. *See Carey*, 549 U.S. at 77.

Second, even if the rule articulated in *United States v. Westerdahl*, 945 F.2d 1083 (9th Cir. 1991) and *United States v. Young*, 86 F.3d 944 (9th Cir. 1996), was clearly established federal law applicable to the states, Petitioner's claim fails to meet the standard announced therein. To qualify, Petitioner must show that (1) the excluded testimony was relevant and (2) the government distorted the fact-finding process by denying immunity. *Young*, 86 F.3d at 947. The Court of Appeals found that "Albert's testimony, as vaguely represented by defense counsel," was insufficient to show that the fact-finding process had been distorted. *Renfro*, No. C044390, 2005 Cal. App. Unpub. LEXIS at *9. The Court agrees that the loss of Albert's testimony that he sold the bracelet to Petitioner and that he was unsure of when Edgar spoke with Petitioner about getting the bracelet back did not distort the fact-finding process. The decision of the Court of Appeal cannot be said to be contrary to clearly established federal law.

Finally, even if the failure to accord Albert use immunity was constitutional error, the Court cannot say Petitioner was prejudiced thereby given the equivocal nature of Albert's testimony, as represented by defense counsel. *See Brecht*, 507 U.S. at 638.

II - "Dynamite" Charge

Petitioner claims that the trial court's supplemental jury instruction coerced the jury into unanimity in violation of due process. Respondent submits that the Court of Appeal's conclusion

---

[1] A criminal defendant has a right to present witnesses in his own defense based on the Sixth Amendment's compulsory process provision and the Due Process Clause of the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 19 (1967). A court may not arbitrarily exclude a material defense witness from the stand or material portions of his testimony. *See, e.g., Rock v. Arkansas*, 483 U.S. 44, 55 (1987) (per se exclusion of posthypnosis testimony violated due process); *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973) (state evidentiary rules that barred defendant from presenting trustworthy exculpatory testimony violated due process).

that the supplemental charge in this case was not coercive is not an unreasonable application of clearly established federal law. The Court of Appeal denied this claim on direct review:

> Defendant contends the trial court gave what used to be called a "dynamite" instruction to a deadlocked jury. (*Allen v. United States* (1896) 164 U.S. 492 [41 L. Ed. 528].) He insists that the court's lengthy instruction encouraging the jurors to continue their deliberation and suggesting alternative styles of deliberation coerced them to reach a verdict, the type of instruction condemned by our Supreme Court over 25 years ago in *People v. Gainer* (1977) 19 Cal.3d 835, 139 Cal. Rptr. 861 (*Gainer*). To his credit, he recognizes that three years ago in *People v. Moore* (2002) 96 Cal.App.4th 1105 *(Moore*), this court commended the author of an almost identical instruction for drafting a noncoercive instruction to guide the jury in its difficult task of reaching a verdict, if possible, and we rejected the very arguments he advances here. Just last year, this court criticized a trial court for not using the same instruction. (*People v. Hinton* (2004) 121 Cal.App.4th 655, 661 (*Hinton*).) For all the reasons articulated in both *Moore* and *Hinton*, we find that the instruction does not run afoul of defendant's federal or state rights to due process.
>
> In raising the issue, defendant encourages us to revisit the holdings in *Moore* and *Hinton*. We remain satisfied that the instruction approved in those cases does not commit the twin sins exposed in *Gainer*. The instruction does not impliedly direct the minority jurors to rethink their position in light of the majority's views, nor does it urge the jury to reach a resolution to avoid the additional burden on the administration of justice another trial would inevitably entail. Rather, the trial court, by utilizing the instruction used in *Moore*, carefully exercised its power, "'without coercing the jury into abdicating its independent judgment in favor of considerations of compromise and expediency. . . .' [Citation.]" (*Moore*, *supra*, 96 Cal.App.4th at p. 1121.)
>
> Alternatively, defendant urges us to distinguish *Moore*. Indeed, he points out that in *Moore* the jury was hung on one out of three counts and the court did not inquire as to the numerical division of the jury. He also contends that while his case was relatively simple, *Moore* was charged with attempted premeditated murder and assault with a deadly weapon. He fails to explain the significance of these distinctions and we cannot see any. The instruction attempts to guide the jury through a difficult deliberative process. The deliberative process may have stalled for any number of reasons that remain, of course, undisclosed to the trial judge. But the reasons for the deadlock do not render the instruction coercive in some contexts and innocuous in others. We reject defendant's invitation to distinguish *Moore* based on nothing more than his identification of obvious, but meaningless, differences in the charges or the numerical split between the jurors.

*Renfro*, No. C044390, 2005 Cal. App. Unpub. LEXIS 9029 at *11-13.

There are no *per se* constitutional rules prohibiting state courts from polling a jury or giving a supplemental charge. *Lowenfield v. Phelps*, 484 U.S. 231, 237-40 (1988). The Supreme Court has long sanctioned the use of a supplemental instruction. *Id*. at 237 (citing *Allen v. United States*, 164 U.S. 492 (1896)). While the practice of polling the jury during deliberations is proscribed in federal courts, there is no constitutionally derived rule making the same prohibition applicable to state courts. *Id*. at 239-40 (discussing *Brasfield v. United States*, 272 U.S. 448, 450 (1926)). The question of whether a particular supplemental instruction was coercive thus depends on the wording

of the instruction viewed in context under the totality of the circumstances. *Id*. at 237.  The Ninth Circuit has suggested looking at four factors to structure the inquiry:  (1) the form of the jury instruction; (2) the amount of time of deliberation following the instruction; (3) the total time of deliberation; and (4) other indicia of coerciveness or pressure.  *United States v. Foster*, 711 F.2d 871, 884 (9th Cir. 1983).

Here, the case went to the jury on the fifth day of trial.  After the first day of deliberation, the jury notified the trial court it was having difficulty reaching a decision.  The trial court ascertained from the jury that it had thus far taken three votes and remained split nine to three.  The trial judge very specifically told the jury not to indicate whether the split was in favor of conviction or acquittal.  Over the Petitioner's objection, the trial court gave the following supplemental instruction:

> Members of the jury, you have reported to me that you have been unable to reach a verdict as to Count One.
>
> It has been my experience on more than one occasion that a jury which initially reported it was unable to reach a verdict was ultimately able to arrive at a verdict before it.
>
> To assist you, in your further deliberations, I'm going to further instruct you as follows: Your goal as jurors should be to reach a fair and impartial verdict, if you are able to do so, based solely on the evidence presented and without regard for the consequences of your verdict, regardless of how long it takes you to do so.
>
> It is your duty as jurors to carefully consider, weigh, and evaluate all the evidence presented at trial, to discuss your views regarding the evidence and to listen to and consider the views of your fellow jurors.
>
> In the course of your further deliberations you should not hesitate to reexamine your own views or to request your fellow jurors to reexamine theirs.  You should not hesitate to change a view you once held if you are convinced it is wrong or to suggest other jurors change their views, if you are convinced they are wrong.
>
> Fair and effective jury deliberations require frank and forthright exchange of views.
>
> As I previously instructed you, each of you must decide the case for yourself and you should do so only after a full and complete consideration of all the evidence with your fellow jurors.
>
> It is your duty as jurors to deliberate with the goal of arriving at a verdict on the charge if you can do so without violence or to your own individual judgment.
>
> Both the People and the defendant are entitled to the individual judgment of each juror.  As I previously instructed you, you have the absolute discretion to conduct your deliberations in any way you deem appropriate.  May I suggest, however, [that] since you have not been enable [sic] to arrive at a verdict using the methods you have chosen, that you consider changing the methods you have been following, at least temporarily, and try some new methods.

   For example, you may wish to consider having different jurors lead the discussion for a period of time, or you may wish to experiment with reverse role playing by having those on one side of an issue, present and argue the other side's position and vice versa. This might enable you to better understand the others' positions.

   By suggesting you should consider changes in your methods of deliberations, I want to stress that I am not dictating or instructing you as to how to conduct your deliberations.

   I merely believe you may find it productive to do whatever is necessary to ensure that each juror has a full and fair opportunity to express his or her views and to consider and understand the views of the other jurors.

   I also suggest that you reread CALJIC instruction 1.00 on page one and CALJIC instructions 17.40 and 17.41 on page 10.

   These instructions pertain to your duties as jurors and make recommendations on how you should deliberate.

   The integrity of a trial requires that jurors at all times during their deliberations conduct themselves as required by these instructions. CALJIC instruction 1.00 defines the duties of a juror. The decision the jury renders must be based on the facts and the law.

   You must determine what facts have been proved from the evidence received in the trial and not from any other source. A fact is something proved by the evidence or by stipulation.

   Second, you must apply the law I state to you to the facts as you determine them and this way arrive at your verdict.

   You must accept and follow the law as I state it to you, regardless of whether you agree with the law.

   If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instructions on the law, including the instruction I am giving you, you must follow my instructions.

   CALJIC No. 17.40 defines the jury's duty to deliberate. The decisions you make in this case must be based on the evidence received in the trial and the instructions given by the Court. These are the matters this instruction requires you to discuss for the purpose of reaching a verdict.

   CALJIC No. 17.41 is an instruction which recommends how jurors should approach their task. You should keep in mind the recommendations this instruction suggests when considering the additional instructions, comments and suggestion I have made in the instruction now presented to you.

   I hope my comments and suggestion may be of some assistance to you. You are ordered to continue your deliberations after our noon recess.

Reporter's Transcript at 877-81.

After lunch, the jury deliberated for 30 minutes before asking the court to clarify the elements of the charged offense. The trial court and counsel agreed upon a written response, which was given to the jury. The jury returned its verdict shortly thereafter.

The Court of Appeal's judgment that the charge and surrounding circumstances were not coercive was a reasonable application of clearly established federal law. Although the trial court asked the jury to reveal its numerical division, it made very clear it was not interested how the jury was leaning. The trial court never singled out the minority, rather it encouraged all the jurors to reexamine their views in light of the opinions of the other jurors. The jurors were reminded throughout the instruction that each juror should come to his or her individual judgment, and that agreement should be reached only if possible. The time that expired between the supplemental instruction and the verdict, and the jury's request for clarification of the elements of the crime, demonstrates continued deliberation rather than coercion. In short, there is nothing in the surrounding circumstances or the instruction itself to lead the Court to believe jurors were coerced into giving up their independent judgment.

III - *Blakely* Claim

Petitioner claims his sentence violates his Sixth Amendment right to a jury trial because the trial court imposed an upper term sentence based on factual findings not made by a jury beyond a reasonable doubt. Docket No. 1 at 57. In support of his claim, Petitioner cites *Apprendi v. New Jersey*, 530 U.S. 466, (2000), *Blakely v. Washington*, 542 U.S. 296 (2004), and *United States v. Booker*, 543 U.S. 220 (2005). Respondent argues that Petitioner's sentence passes muster because the upper term was based, *inter alia*, on the fact of Petitioner's prior convictions, which fall under the *Almendarez-Torres* exception to the fact-finding requirements established in the *Apprendi* line of cases. *See Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998) (fact of a prior conviction need not be proved to a jury beyond a reasonable doubt).

The Court of Appeal addressed this claim on direct review. In reliance on *People v. Black*, 35 Cal.4th 1238, 1244, 1254 (Cal. 2005) ("*Black I*"), it found that the rule established in *Apprendi*, *Blakely*, and *Booker* did not apply to judicial fact-finding done in the exercise of a judge's discretion

to impose an upper term sentence under California law. *Renfro*, No. C044390, 2005 Cal. App. Unpub. LEXIS 9029 at *17. Alternatively, it found that:

> Even assuming that *Apprendi* and its progeny applied to California's determinate sentencing law, defendant's contentions would still fail. One of the reasons the trial court gave for imposing the upper term is defendant's prior criminal convictions. (Cal. Rules of Court, rule 4.421(b)(2).) The rule of *Apprendi* and *Blakely* does not apply to a prior conviction used to increase the penalty for a crime. Since one valid factor in aggravation is sufficient to expose defendant to the upper term (*Cruz*, *supra*, 38 Cal.App.4th at p. 433), the trial court's consideration of other factors, in addition to the prior conviction, in deciding whether to impose the upper term did not violate the rule of *Apprendi* and *Blakely*.

*Id*. at *17-18.

Subsequent to the Court of Appeal's decision, the Supreme Court ruled, contrary to *Black I*, that California's determinate sentencing scheme ran afoul of the Sixth Amendment. *Cunningham v. California*, 549 U.S. 270, 274-75 (2007) ("the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant"). *Cunningham* did not announce a new rule of constitutional law; it merely applied the rule announced in *Blakely*, and is therefore retroactively applicable to any conviction that became final after *Blakely* was filed on June 24, 2004. *Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008). Thus, the question before this Court is whether the Court of Appeal's alternative ground was an unreasonable application of clearly established federal law.

The Supreme Court of California has held that under California's determinate sentencing scheme, "the presence of one aggravating circumstance renders it lawful for the trial court to impose an upper term sentence." *People v. Black*, 41 Cal.4th 799, 815 (Cal. 2007) ("*Black II*"). The Court is bound to accept this interpretation of California's law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Butler*, 528 F.3d at 642. Accordingly, "if at least one of the aggravating factors on which the judge relied in sentencing [Petitioner] was established in a manner consistent with the *Sixth Amendment*, [Petitioner's] sentence does not violate the Constitution." *Butler*, 528 F.3d at 643.

The California Court of Appeal found that the trial court's reliance on the fact of Petitioner's prior convictions was consistent with the Sixth Amendment. *Renfro*, No. C044390, 2005 Cal. App. Unpub. LEXIS 9029 at *17-18. Respondent argues the court's decision is a reasonable interpretation of the *Almendarez-Torres* exception, which allows judges to increase the penalty for a crime based on the fact of a defendant's prior convictions without proving the prior convictions to a

11

jury beyond a reasonable doubt. *See Almendarez-Torres*, 523 U.S. at 247. Although some have questioned the ongoing validity of *Almendarez-Torres*, this Court is bound to apply the exception "unless and until it is rejected by the Supreme Court." *Butler*, 528 F.3d at 643.

The Ninth Circuit has established three prerequisites for application of the *Almendarez-Torres* exception. First, the aggravating factor relied upon must be ascertained from a prior conviction stemming from a proceeding that afforded the right to a jury and proof beyond a reasonable doubt. *Id*. at 645 (citing *United States v. Covian-Sandoval,* 462 F.3d 1090, 1097 (9th Cir. 2006) (immigration removal order does not qualify as a prior conviction for *Apprendi* purposes)). "Second, the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary 'facts that are derived or inferred' from a prior conviction or from the conviction documents.'" *Id*. (quoting *United States v. Kortgaard*, 425 F.3d 602, 610 (9th Cir. 2005). "Third, as the prior conviction exception is justified by the reliability of the court documents created as part of a process with Sixth Amendment safeguards, it does not extend to facts that may be proven only by reference to documents that were not developed as a result of such a process." *Id*.

The trial court sentenced Petitioner to an upper term based, *inter alia*, on its finding that Petitioner had been convicted in state court of committing a lewd and lascivious act with a child under the age of 14 on August 28, 1992. *Renfro*, No. C044390, 2005 Cal. App. Unpubl. LEXIS 9029 at *12. This in turn was based on an abstract of judgment. *See* Reporter's Transcript at 912. The trial court's factual finding here was at the heart of the *Almendarez-Torres* exception, clearly meeting all three of the prerequisites identified by the Ninth Circuit in *Butler*. Accordingly, the Court cannot say that the decision of the California Court of Appeal on this point was an unreasonable application of clearly established federal law.

## CONCLUSION

Petitioner's application must be denied as his claims are without merit. Further, as no reasonable jurist could debate whether the petition should have been resolved in a different manner, the Court declines to issue a Certificate of Appealability.[2] Any further request for a Certificate of

---

[2] A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a

12

Appealability must be addressed to the Court of Appeals. *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;

2. The Court declines to issue a Certificate of Appealability; and

3. The Clerk shall enter judgment accordingly.

Dated this the 20th day of February 2009.

                                              /s/ James K. Singleton, Jr.
                                              **JAMES K. SINGLETON, JR.**
                                              United States District Judge

---

COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).